IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JONATHAN VAUGHAN,<br>         *Plaintiff*,<br>v.<br>SEARS LOGISTICS SERVICES, INC.,<br>         *Defendant*. | CIVIL ACTION NO. 6:12-CV-00059<br><br>MEMORANDUM OPINION<br><br>NORMAN K. MOON<br>UNITED STATES DISTRICT JUDGE |

As explained further herein, Defendant was a statutory employer of Plaintiff, and under the exclusivity provisions of the Virginia Workers' Compensation Act (the "Act"), Defendant is not susceptible to Plaintiff's tort claims. Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(1), I will grant Defendant's motion to dismiss for lack of jurisdiction.[1]

**I.**

As a preliminary matter, I must address Plaintiff's argument that Defendant's motion should be deemed withdrawn pursuant to this Court's Local Rules. Local Civil Rule 11(b) provides, in pertinent part, that

---

[1] As the instant complaint discloses and the parties acknowledge, this matter has been before me previously. On April 28, 2011, *Vaughan v. Sears Logistic Services, Inc.*, Civil Action No. 6:11-cv-00011, was removed here from the Circuit Court for the City of Lynchburg. While the case was still pending in state court, Defendant had filed a motion to dismiss the state court action, arguing that Plaintiff's claim was barred because the Virginia Workers' Compensation Act provided Plaintiff's exclusive remedy. Defendant then removed the matter to this court. Thereafter, Plaintiff filed, on May 16, 2011, a "Motion to Dismiss or Strike Sears' Logistic Services, Inc.'s 'Motion to Dismiss – Special Plea of Workers' Compensation.'" By memorandum opinion and order entered on August 15, 2011, I denied the motion. On March 15, 2012, the jury trial scheduled to commence on May 30, 2012, was canceled pursuant to Defendant's motion to continue the trial date, and on March 28, 2012, the matter was set for trial to commence on August 30, 2012. On May 17, 2012, Plaintiff voluntarily dismissed the complaint.

> [t]he moving party is responsible either to set a motion for hearing or to advise the Court that all parties agree to submission of the motion without a hearing. *The non-moving party also may arrange for a hearing. All hearings are to be at a date and time obtained from and scheduled by the Court. Unless otherwise ordered, a motion is deemed withdrawn if the movant does not set it for hearing (or arrange to submit it without a hearing) within 60 days after the date on which the motion is filed.*

W.D. Va. Civ. R. 11(b) (emphasis added).

Plaintiff points out that the motion was filed on December 7, 2012, and that, under Local Rule 11(b), Defendant had until February 5, 2013, to set the matter for a hearing. According to Plaintiff's counsel, Defendant's counsel failed to timely set the matter for a hearing, and the motion should be deemed withdrawn.

However, the record contains ample documentation showing that Defendant's counsel attempted to schedule a hearing, but that Plaintiff's counsel failed to cooperate with Defendant's counsel, who made numerous attempts to contact Plaintiff's counsel in order to set the matter for a mutually acceptable date chosen from a number of available dates Defendant's counsel had obtained from the Clerk of the Court. *See* docket no. 15.[2] Moreover, this Court's Local Civil Rules were adopted in accordance with Rule 83(a) of the Federal Rules of Civil Procedure, and "[i]t is . . . entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on

---

[2] Although Plaintiff's counsel stated in a "Motion for Leave to Respond to Motion to Dismiss Outside of 14-Day Period" that, "[d]ue to an administrative error in his office, [counsel] did not see the motion" until February 11, 2013, *see* docket no. 12, Defendant's submissions in support of its opposition to the motion, *see* docket no. 15, indicate that, at the very least, Plaintiff's counsel knew about the motion before February 11, 2013, given that he personally responded via e-mail on January 11, 2013, January 23, 2013, and January 31, 2013, to repeated requests from Defendant's counsel and Defendant's counsel's office asking him to choose a hearing date from a list of proposed available dates provided by the Clerk of the Court or to propose alternative dates. By oral order entered on April 12, 2013, a United States Magistrate Judge granted Plaintiff's "Motion for Leave to Respond to Motion to Dismiss Outside of 14-Day Period"; had the magistrate judge not granted that motion, Defendant's motion to dismiss could have been granted as unopposed, as provided in the pretrial order, which I entered on December 10, 2012, pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. *See* docket no. 8, pretrial order, paragraph 7 ("Except for good cause shown, if a brief opposing a motion is not timely filed, the court will consider the motion to be unopposed.").

the merits to be avoided on the basis of such mere technicalities." *Foman v. Davis*, 371 U.S. 178, 181 (1962); *see also* W.D. Va. Standing Order No. 2010-2 (March 9, 2010) (adopting Local Rules in accordance with, *inter alia*, Fed. R. Civ. P. 83(a)); *Michael v. Sentara Health Sys.*, 939 F. Supp. 1220, 1225 n. 3 (E.D. Va. 1996) ("the application of the local rules is within the discretion of the Court").

Accordingly, I will not deem the instant motion withdrawn.

## II.

The complaint states the following, in pertinent part (paragraph numbering omitted; emphases added; otherwise verbatim):

> The plaintiff is a citizen of the Commonwealth of Virginia. The defendant is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Hoffman Estates, Illinois. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.
>
> Jonathan Vaughan is a resident of Lynchburg, Virginia.
>
> Sears Logistics Services, Inc. is a corporation doing business in Virginia with a registered agent for service of process.
>
> On or about October 1, 2009, Plaintiff, Jonathan Vaughan, picked up a trailer from the defendant, Sears Logistics Services, Inc. (Hereinafter "Sears Logistics") at one of its locations in Middleton, Pennsylvania. Sears Logistics had the exclusive and sole duty to load the trailer in a safe and proper manner. Plaintiff, Jonathan Vaughan, fixed the trailer to the truck he was operating and drove it to Westminster, Maryland.
>
> On October 2, 2009, Jonathan Vaughan, delivered the trailer to Sears Auto Center in Westminster, Maryland. *After the Sears Auto Center's manager clipped the seal on the trailer,* **Vaughan, opened the door to the trailer**. When he did so about half of a row of tires loaded into the truck came crashing out and struck Vaughan in the shoulder causing severe, painful, and permanent injuries.
>
> The defendant, and its employees and agents were negligent in the following ways:

(a) They failed to properly secure the load in a safe and proper manner so that when the trailer door was opened the person opening it would not be injured;

(b) They failed to warn Vaughan that the trailer was dangerously loaded so that he could protect himself when the door was opened;

(c) They loaded the trailer improperly on the safety plate thereby overloading the trailer and illegally exposing Vaughan and others to injury;

(d) They were negligent in other ways discovery shall reveal.

As a result of the aforesaid negligence and illegal acts, Plaintiff, Jonathan Vaughan, was severely, painfully, and permanently injured causing great pain, suffering, inconvenience, medical, surgical, and physical therapy care, both in the past and in the future, loss of income, loss of earning capacity, and permanent disability and impairment.

Plaintiff "moves the Court for judgment . . . in the amount of $500,000 plus costs and for all other relief law or equity may seem met."

### III.

#### A.

The plaintiff bears the burden of establishing the existence of subject-matter jurisdiction when challenged under Rule 12(b)(1). *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In considering a challenge to its subject-matter jurisdiction, a district court may look beyond the pleadings without converting the proceeding to a motion for summary judgment.[3] *Id*. "The moving party should prevail only if the material

---

[3] This matter, which the parties have briefed and argued, is before me on Defendant's motion; however, a court has an independent "obligation to consider the question [of subject-matter jurisdiction] *sua sponte*." *Andrus v. Charlestone Stone Prods. Co., Inc.*, 436 U.S. 604, 608 n. 6 (1978). When deciding a 12(b)(1) motion, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The party asserting subject-matter jurisdiction has the burden of proving that the court has jurisdiction over the case. *Adams v.*
(continued...)

jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted).[4]

Defendant now moves for dismissal for lack of jurisdiction pursuant to Rule 12(b)(1) on the ground that Defendant is a statutory employer of Plaintiff, and Defendant is therefore

---

[3](...continued)
*Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction." *Id*. A district court should dismiss a complaint for lack of subject-matter jurisdiction if a plaintiff can prove no set of facts in support of his claim which would entitle him to federal subject-matter jurisdiction. *Glenn v. Lafon*, 427 F. Supp. 2d 675, 677 (W.D. Va. 2006). The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Evans v. B.F. Perkins Co., Div. of Standex Intern. Corp.*, 166 F.3d 642, 647 (4th Cir. 1999); *Adams*, 697 F.2d at 1219 (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)). I must accept all well-pleaded factual allegations as true. *Glenn*, 427 F. Supp. 2d at 677 (citing *Jenkins v. McKeithen*, 395 U.S. 411 (1969); *Falwell v. City of Lynchburg*, 198 F. Supp. 2d 765, 771–72 (W.D. Va. 2002)). I may consider the pleadings as evidence on the issue of jurisdiction while also considering evidence outside the pleadings without converting the motion into one for summary judgment. *Evans*, 166 F.3d at 647 (citing *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768). In such a case, a district court essentially applies the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *Glenn*, 427 F. Supp. 2d at 677 (citing *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768). A court should grant the motion only where the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id*. (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)).

[4] Without citation to any precedent, Plaintiff contends that Defendant "in effect concedes subject matter jurisdiction when it asks the Court to rule on whether Jonathan Vaughan is a statutory employee of Sears Logistics." However, Rule 12(b)(1) of the Federal Rules of Civil procedure specifically provides that "lack of subject-matter jurisdiction" is a defense that may be asserted by motion. Indeed, as previously noted, a court has an independent "obligation to consider the question *sua sponte*." *Andrus*, 436 U.S. at 608 n. 6. And, as cited above, the plaintiff bears the burden of establishing the existence of subject-matter jurisdiction when challenged under Rule 12(b)(1). Plaintiff ignores that cases recognizing the exclusivity provision of the Virginia Workers' Compensation Act as grounds for dismissal for lack of jurisdiction have been affirmed on appeal to the United States Court of Appeals for the Fourth Circuit. *See, e.g., Meredith v. Honeywell Intern., Inc.*, 245 Fed. Appx. 325 (4th Cir. 2007) (driver employed by independent contractor brought suit against manufacturer for injuries he suffered while awaiting unloading of his truck at manufacturer's plant; pursuant to Fed. R. Civ. P. 12(b)(1), district court dismissed suit as barred by exclusivity provision of Virginia Workers' Compensation Act because manufacturer was driver's statutory employer; Court of Appeals affirmed); *Banks v. Virginia Elec. & Power Co.*, 205 F.3d 1332 (Table) (4th Cir. 2000) (affirming district court's 12(b)(1) dismissal upon concluding that the plaintiff, a supervisor for a tree-trimming company, was a statutory employee of the defendant at the time of his injury and therefore his exclusive remedy was workers' compensation benefits); *Evans*, 166 F.3d at 644-45 (affirming district court's 12(b)(1) dismissal of claim brought by subcontractor's employee against manufacturer and two of its contractors upon concluding that the plaintiff was a statutory employee and therefore the Virginia Workers' Compensation Act provided the plaintiff's exclusive remedy).

immune from this suit because the sole jurisdiction for Plaintiff's claims arising out of the stated injuries resides with the Virginia Workers' Compensation Commission (from which Plaintiff has accepted an award). Whether an individual is a statutory employee is a jurisdictional matter presenting a mixed question of law and fact that must be determined according to the facts of each case. *Burch v. Hechinger Co.*, 264 Va. 165, 169 (2002). Applying the body of relevant case law to the facts of this case, I conclude that Plaintiff was Defendant's statutory employee when his injuries occurred.

As the parties acknowledged at the hearing on the instant motion, the material facts are not in dispute. The only dispute is whether Plaintiff's negligence claims against Defendant are barred by the exclusivity provision of the Virginia Workers' Compensation Act. Plaintiff's opposition to Defendant's motion contends that he "is not the statutory employee of Sears Logistics Services, Inc.," and he quotes *Napper v. ABM Janitorial Services Mid-Atlantic, Inc.*, 284 Va. 55 (2012), for the proposition that

> The remedies afforded the employee under the [A]ct are exclusive of all his former remedies within the field of the particular business, but the [A]ct does not extend to accidents caused by strangers to the business. If the employee is performing the duties of his employer and is injured by a stranger to the business, the compensation prescribed by the act is available to him, but that does not relieve the stranger of his full liability for the loss. . . .

*Id*. at 62 (quotations omitted). However, as discussed below, the undisputed facts lead me to conclude that Plaintiff was not "injured by a stranger to the business," and Defendant was Plaintiff's statutory employer when Plaintiff was injured. *Id*. (quotations omitted).

*B*.

Defendant has submitted the following documents in support of its motion to dismiss: a stipulated order issued by the Virginia Workers' Compensation Commission (the "VWCC") on September 21, 2011; an amended stipulated order issued by the VWCC on September 26, 2011;

the April 13, 2012, affidavit of Chantell Loser, the "On-Site Manager for Swift Transportation Company of Arizona, LLC at the Middletown, Pennsylvania location"; and the affidavit, dated March 14, 2012, of Joe Bacinski, "the Loss Prevention Manager for Sears Logistics Services, Inc. at the Middletown, Pennsylvania location."

The amended stipulated order issued by the VWCC on September 26, 2011, states, in relevant part:[5]

> COME NOW the Claimant, Employer and Insurer, by counsel, and stipulate to the following facts in this matter with respect to the claimant's Request for Hearing filed July 19, 2010:
>
> 1. On October 2, 2009, the Claimant sustained a compensable foreign injury, per section 65.2-508 of the Code of Virginia, to his right shoulder. Claimant's pre-injury average weekly wage is $1,286.54.
>
> 2. The Claimant has been paid various periods of compensation awarded by the Pennsylvania Bureau of Workers' Compensation.
>
> 3. Since June 14, 2010, the claimant has been employed by the Employer in a light-duty job earning $290 pe week.
>
> 4. The Claimant is currently receiving temporary partial disability compensation in the weekly amount of $664.36 pursuant to a Pennsylvania award entered July 19, 2010.
>
> 5. On July 19, 2010, the Claimant filed a Request for Hearing, whereby he seeks an Award of temporary total disability compensation from October 2, 2009 and a lifetime award of medical benefits for his injury.
>
> 6. The Claimant is entitled to an Award for the following periods of compensation:
>
>   a.   Temporary total disability compensation in the weekly

---

[5] The only difference between the stipulated order issued by the Virginia Workers' Compensation Commission (the "VWCC") on September 21, 2011, and its amended stipulated order issued on September 26, 2011, is that the former awarded Plaintiff's counsel "$4,600.00 for fees and expenses in connection with his representation of the Claimant," whereas the latter amended the award of fees to $1,081.42. Plaintiff was represented before the VWCC by the same attorney who represents him in the instant matter.

     amount of $857.70 for the period of October 2, 2009 through October 25, 2009;

  b.  Temporary partial disability compensation in the weekly amount of $664.36 for the period of October 26, 2009 through March 28, 2010;

  c.  Temporary total disability compensation in the weekly amount of $857.70 for the period of March 29, 2010 through June 13, 2010; and

  d.  Temporary partial disability compensation in the weekly amount of $664.36 commencing June 14, 20010 and continuing until circumstances warrant a change.

 7. Pursuant to section 65.2-603 of the Code of Virginia, the Claimant is entitled to a lifetime Award of reasonable and necessary medical expenses incurred for treatment of his compensable right shoulder injury.

 8. In accordance with section 65.2-508(B) of the Code of Virginia, the Employer and Insurer are entitled to an offset against any Virginia award in connection with the October 2, 2009 accident for compensation paid pursuant to Pennsylvania law for the same accident, and such compensation paid in Pennsylvania shall count toward the maximum amount of compensation available to the Claimant under Virginia law.

 9. The parties agree that the claimant's compensation under Pennsylvania law should be terminated and an Award of compensation under Virginia law should be entered; accordingly the parties shall execute and file with the Pennsylvania Bureau of Workers' Compensation whatever documents are necessary to terminate the Claimant's current Pennsylvania award of compensation as of May 15, 2011.

 10. As of May 16, 2011, payment by the Employer and Insurer of temporary partial disability compensation to the Claimant at the weekly amount of $644.36 shall commence and shall continue until circumstances warrant a change.

 11. Claimant's counsel is entitled to $1,081.42 for fees and expenses in connection with his representation of the Claimant, to be deducted from the claimant's compensation. To the extent accrued compensation is insufficient to deduct such fees and expenses, this amount shall be collectible directly from the Claimant.

 WHEREFORE, it appearing proper to do so, the foregoing stipulations of the parties are adopted by the Commission, and an Award consistent with the

stipulations stated above is hereby entered.[6]

The affidavit of Chantell Loser, the "On-Site Manager for Swift Transportation Company of Arizona, LLC at the Middletown, Pennsylvania location," dated April 13, 2012, provides the following statement, in pertinent part:

> 3. Jonathan Vaughan began his employment as a Tractor trailer driver with Swift Transportation Company of Arizona, LLC on March 21, 2003 and remains an employee as of the date of this affidavit.
>
> 4. From April 2, 2009 to April 2, 2010 Swift Transportation Company of Arizona, LLC transported two thousand one hundred ninety-nine (2,199) loads of Sears automotive products into and out of the Sears Logistics Terminal at Middletown, Pennsylvania.
>
> 5. From April 2, 2009 to October 2, 2009 Jonathan Vaughan drove thirty-eight (38) loads of Sears automotive products into and out of the Sears Logistics Terminal at Middletown, Pennsylvania.
>
> * * *
>
> 7. During the period of April 2, 2009 to April 2, 2010, Swift Transportation Company of Arizona, LLC was contracted with Sears Logistic Services, Inc. to transport merchandise from the Sears Logistics Middletown Pennsylvania terminal to Sears Auto Center locations.
>
> 8. On October 1, 2009 Jonathan Vaughan, as a truck driver in the scope of his employment with Swift Transportation Company of Arizona, LLC and pursuant to the contract to do so, departed the Sears Logistics location in Middletown, Pennsylvania pulling Trailer number 083902 containing merchandise to be delivered to Sears Auto Center locations in Westminster, Maryland; Gaithersburg, Maryland; Silver Spring, Maryland; Bethesda, Maryland; and Dulles, Virginia.
>
> 9. Swift Transportation Company of Arizona, LLC is a transportation company with the trade, business, or occupation of transporting goods from one location to another.
>
> * * *

---

[6] "Counsel for Claimant" (as previously noted, the same attorney who represents Plaintiff in this matter) and "Counsel for Employer and Insurer" both consented to the entry of the amended stipulated order.

11. On October 1, 2009 and October 2, 2009, Jonathan Vaughan was a truck driver and drove Sears automotive parts from Middletown, Pennsylvania to Sears Auto Center locations in Westminster, Maryland; Gaithersburg, Maryland; Silver Spring, Maryland; Bethesda, Maryland; and Dulles, Virginia.

The affidavit of Joe Bacinski, "the Loss Prevention Manager for Sears Logistics Services, Inc. at the Middletown, Pennsylvania location," dated March 14, 2012, states as follows, in relevant part:

3. Sears Logistics Service, Inc. is a company with the trade, business, or occupation of transporting goods from warehouses to Sears Retail Stores and Sears Auto Centers.

4. During the period of April 2, 2009 to April 2, 2010, Swift Transportation Company of Arizona, LLC was contracted with Sears Logistic Services, Inc. to transport merchandise from the Sears Logistics Middletown Pennsylvania terminal to Sears Auto Center locations.

5. From April 2, 2009 to April 2, 2010 Swift Transportation Company of Arizona, LLC transported two thousand one hundred ninety-nine (2,199) loads of Sears automotive products into and out of the Sears Logistics Terminal at Middletown, Pennsylvania.

6. From April 2, 2009 to October 2, 2009 Jonathan Vaughan, as an employee of Swift Transportation Company of Arizona, LLC, transported thirty-eight (38) loads of Sears automotive products into and out of the Sears Logistics Terminal at Middletown, Pennsylvania.

7. On October 1, 2009 Jonathan Vaughan, in the scope of his employment with Swift Transportation Company of Arizona, LLC and pursuant to the contract to do so, departed the Sears Logistics location in Middletown, Pennsylvania transporting Trailer number 083902 containing merchandise to be delivered to Sears Auto Center locations in Westminster, Maryland; Gaithersburg, Maryland; Silver Spring, Maryland; Bethesda, Maryland; and Dulles, Virginia.

*C.*

In support of his response in opposition to the motion to dismiss, Plaintiff has submitted his own affidavit, dated April 19, 2013. In support of his affidavit, Plaintiff has attached a

printed screenshot of a Web-page, http://slslogistics.com/aboutUs.html, dated April 18, 2013.[7]

The Web-page is titled "About Us," and it states as follows:

> Since 1939, **Sears Logistics Services, Inc. (SLS)** has become a supplier of best-in-class supply chain solutions. Headquartered in Hoffman Estates, IL(USA), SLS maintains partnerships across North America, Europe and Asia. With 49 facilities across the United States (capacity over 46.5 million square feet), SLS is one of the largest purchasers of worldwide transportation with the capacity and capability to move any type of product. SLS has the ability to provide end-to-end supply chain solutions that are integrated and synchronized to address unique challenges.
>
> To meet customer freight needs, SLS provides access to transportation providers worldwide, including contract motor carriers, rail carriers, air freight carriers, and ocean carriers. With a performance-driven culture and proven track record of success, SLS has built a strong reputation as an industry leader.

*See* http://slslogistics.com/aboutUs.html (last accessed June 19, 2013). The "About Us" Web-page includes the following section subtitled "Service Offerings":

> Broad and inclusive service offerings ensure that customers win by delivering great logistics solutions at the right cost. SLS expertise can be broken down into the following areas:
>
> Warehousing
> eCommerce Fulfillment
> Network Consulting
> Facility Design
> Project Management
> Freight Management
> Inbound/Outbound Network Optimization
> Freight Cost Reduction
> Freight Consolidation/Deconsolidation Services
> Global Transportation Network Design
> Global Sourcing Solutions
> Labor Performance Analysis
> Reverse Logistics

---

[7] Plaintiff's submission truncated the right hand margin of the content. The "All Rights Reserved" line on the Web-page suggests that, as of June 19, 2013, the content at http://slslogistics.com/aboutUs.html has not been modified since 2010. *See* http://slslogistics.com/aboutUs.html (last accessed June 19, 2013).

Plaintiff's affidavit states that he "was a truck driver for Swift Transportation Company of Arizona, LLC," with which he "began employment . . . in March 2003," and provides the following statements (paragraph numbering omitted):

> Swift Transportation is engaged solely in driving trucks. Swift never engages in the loading of trucks, which is a completely separate business from the driving of trucks. Sears Logistics Services, Inc. is not engaged in the business of driving trucks and to my knowledge they do not own any trucks. Sears Logistics Services, Inc. as shown by its website, is not engaged in the business of truck driving. As shown by its website, a page of which is attached hereto as Exhibit A, Sears Logistics Services, Inc. is engaged in the business of "Warehousing, eCommerce Fulfillment, Network Consulting, Facility Design, Project Management, Freight Management, Inbound/Outbound Network Optimization, Freight Cost Reduction, Freight Consolidation/Deconsolidation Services, Global Transportation Network Design, Global Sourcing Solutions, Labor Performance Analysis, and Reverse Logistics." Truck driving is not a business Sears Logistics Services, Inc. holds itself out to the public as performing.
>
> During my employment with Swift Transportation I am aware of employees of Sears Logistics Services, Inc. bringing suit successfully against Swift Transportation and its employees for alleged negligence in the performance of Swift Transportation's truck driving. I am doing further research on this, as is my lawyer. In any event, I do not thing Sears Logistics Services, Inc. employees could successfully sue Swift Transportation if Swift Transportation is in the same trade or business as Sears Logistics Services, Inc.
>
> To my knowledge Swift Transportation is a complete stranger to the business of Sears Logistics Services, Inc. Swift Transportation does not load any trailers and Swift Transportation employees are not allowed inside Sears Logistics Services, Inc.'s warehouses where the loading of the trailers occurs. Sears Logistics Services, Inc.'s employees seal every trailer and Sears Logistics Services, Inc.'s employees break the seal on every trailer. Swift Transportation truck drivers do not have any part in this, which is a separate business altogether.

## IV.

If Plaintiff was a statutory employee of Defendant under the Act, then this court lacks subject-matter jurisdiction by operation of the Act's exclusivity provision. This provision of the Act is subtitled "**Employee's rights under Act exclude all others**," and it provides, in part, that

> [t]he rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights andd remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death.

Va. Code § 65.2-307(A). The exclusion applies to both actual and statutory employees. Va. Code § 65.2-302(A). The sole exception to the exclusivity provision is that a plaintiff may maintain an action against an "other party." Va. Code § 65.2-309; *Clean Sweep Professional v. Talley*, 267 Va. 210, 213 (2004). An "other party" is someone who is a "stranger to the trade, occupation, or business in which the employee was engaged when he was injured." *Id.*; *see also Feitig v. Chalkley*, 185 Va. 96, 104 (1946) (explaining that "'other party,' . . . refers exclusively to those persons who are strangers to the employment *and the work*" (emphasis added)).

> Section 65.2-302(A) of the Code of Virginia provides as follows:
>
> When any person (referred to in this section as "owner") undertakes to perform or execute *any work which is a part of his trade, business or occupation* and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

(Emphasis added.) According to Plaintiff's own exhibit, the "trade, business or occupation" of Defendant – Sears Logistics – is, *inter alia*, "Warehousing" and "Freight Management." Defendant describes its business as "the trade, business, or occupation of transporting goods from warehouses to Sears Retail Stores and Sears Auto Centers." *See* docket no. 4, affidavit of Joe Bacinski. At the time of Plaintiff's injury, Plaintiff's direct employer – Swift Transportation – "was contracted with [Defendant] to transport merchandise from [Defendant's] Middletown Pennsylvania terminal" to Sears Auto Centers and Sears retail stores. *See* docket no. 4, affidavit

of Loser. Part of Defendant's logistics business is warehousing and freight management, and the delivery of Defendant's freight from its logistics terminal (or warehouse) to its retail and Auto Center locations is a warehousing and freight management operation of which Swift Transportation was an integral part; in other words, the hauling of Defendant's freight is "'obviously a subcontracted fraction of a main concern.'"[8] *Shell Oil Co. v. Leftwich*, 212 Va. 715, 722 (1972) (the "[n]ormally carried on through employees" test does not apply "where the work is obviously a subcontracted fraction of a main concern") (quoting 1A Arthur Larson, THE LAW OF WORKMEN'S COMPENSATION, § 49.12, 872-73). Under the facts of this case, it is "obvious" that the hauling and delivery of freight is essential to the business of freight management, *i.e.*, it is "a subcontracted fraction of a main concern." *Id*. The hauling of Defendant's freight cannot be excised from its business of freight management.[9]

On October 1, 2009, Plaintiff went to the Sears Logistics terminal in Middletown, Pennsylanvia, "picked up a trailer," "fixed the trailer to the truck he was operating," and then "drove it to Westminster, Maryland." The trailer bore a load of automotive products to be

---

[8] Indeed, describing Plaintiff's and Swift Transportation's functions at the greatest possible remove from Defendant, the hauling of Defendant's freight was "'obviously a subcontracted fraction of a main concern.'" *Smith v. Horn*, 232 Va. 302, 308 (1986) (quoting *Shell Oil Co. v. Leftwich*, 212 Va. 715, 722 (1972), and concluding that "the contracted work" of "mining and hauling coal" to a plant for processing "was unquestionably a fraction of [a] main business contract," and the "normally carried on through employees" test does not apply "where the work is obviously a subcontracted fraction of a main concern"); *see also Bowling v. Wellmore Coal Corp.*, 114 F.3d 458, 464 (1986) (discussing *Shell Oil* and *Smith v. Horn*, and concluding that "Bowling's hauling of coal is 'obviously a subcontracted fraction of a main concern'").

[9] Waiting for freight to be unloaded at one of Defendant's locations so that one can move on to deliver freight at another of Defendant's locations cannot constitute a separate or final act of delivery. *See Glenn*, 427 F. Supp. 2d at 678 (plaintiff truck driver for a South Carolina trucking company was statutory employee of Atlas Logistics Group Retail Services when he was either waiting for freight to be unloaded or had finished unloading and was waiting for receipt of his cargo to be completed when a logistics services employee at the warehouse crushed Plaintiff's foot with a forklift; "Taking all factual conflicts in the light most favorable to the plaintiff, the evidence is that . . . he was simply waiting for Atlas' employees to complete the papers necessary to confirm his delivery. . . . The completion of that documentation, not the completion of the unloading of the goods from the truck, constitutes the final act of delivery.).

delivered to a number of Sears Auto Centers. He previously had transported more than thirty loads of Sears automotive products into and out of the Sears Logistics terminal at Middletown, Pennsylvania.. On October 2, 2009, at a Sears Auto Center in Westminster, Maryland, apparently the first of his scheduled deliveries off of the trailer he was hauling that day, "the Sears Auto Center's manager clipped the seal on the trailer," Plaintiff "opened the door to the trailer," and "about half of a row of tires loaded into the truck came crashing out and struck" Plaintiff. (It is not clear whether it was part of Plaintiff's job to open the door, but it is clear that Plaintiff was not completed with his delivery obligations.) Upon these facts, it seems obvious that Plaintiff and Swift Transportation were engaged in the business of hauling freight for Defendant, that Defendant was in the business of managing that freight, and that Plaintiff's injuries were not caused by an "other party" who was a "stranger" to the business of hauling freight. Plaintiff's own affidavit acknowledges that Defendant "is engaged in the business of," *inter alia*, "Warehousing," "Freight Management," "Freight Cost Reduction," and "Freight Consolidation/Deconsolidation Services," and that Defendant contracted with Swift Transportation – Plaintiff's direct employer – to accomplish Defendant's freight management and warehousing services.

On similar facts, the United States Court of Appeals for the Fourth Circuit has held that transporting goods to a distribution center constitutes an activity that is an essential part of a grocery business. *See Hayden v. The Kroger Co.*, 17 F.3d 74, 77 (4th Cir.1994). If transportation is essential to the grocery business, it is even more obviously essential to the business of warehousing and freight management.[10] The Supreme Court of Virginia has also

---

[10] Thus, Plaintiff here was a statutory employee of Defendant, given that he was participating in Defendant's
(continued...)

held that transportation can be an essential element of a business. In *Conlin v. Turner's Express, Inc.*, 229 Va. 557, 559 (1985), the Court determined that the transportation of machinery and parts between Ford plants was an essential component of Ford's business, and thus the motor carrier was not an "other party" against whom a tort action could lie.[11] *See also Floyd v. Mitchell*, 203 Va. 269, 273 (1962) (holding that a pipe manufacturer's business included the shipping of the pipe to customers).[12]

In conclusion, when Plaintiff suffered his injury, he was engaged in Defendant's usual "trade, business or occupation," and therefore his claims against Defendant fall within the scope of the Virginia Workers' Compensation Act. Pursuant to the exclusivity provision of § 65.2-307, his sole relief is that which he has obtained under the Act. Accordingly, this court

---

[10](...continued)
business of freight management. As in *Glenn*, 427 F. Supp. 2d at 679, "this court does not now presume to state . . . a rule" "that delivery persons are always engaged in the receiving party's business when they are on the premises," but "the facts of the present case demonstrate that [Plaintiff] was continuously so engaged."

[11] Plaintiff argues that Defendant does not engage in the actual driving of the trucks, only Defendant's employees seal the trailers, and only Sears Auto Center or Sears retail employees can unseal the trailers. However, the Supreme Court of Virginia also held in *Conlin v. Turner's Express, Inc.*, 229 Va. 557 (1985) that the fact that the motor carrier driver did not assist in loading the trailer was not relevant to a determination of whether the motor carrier was engaged in the business.

[12] In *Floyd v. Mitchell*, 203 Va. 269 (1962), Floyd was killed in an industrial accident, and his employer, Glamorgan Pipe and Foundry Company, paid workers' compensation to his personal representative. Glamorgan manufactured pipe and sold and shipped it to its customers. R.S. Powell, Inc., was a contract motor carrier engaged by Glamorgan to transport pipe from Glamorgan's plant to its customers. Floyd's job consisted of loading pipe on Powell's trailers. As Powell's driver was backing a trailer to position it for loading, the trailer struck and killed Floyd. Floyd's representative sued Powell and its driver. The Supreme Court of Virginia affirmed the trial court's dismissal of the action and ruled that the representative's exclusive remedy was under the Workers' Compensation Act. 203 Va. at 273-74. The Court held that, if an independent contractor is performing work that is part of the trade, business, or occupation of the employer, the contractor is not an "other party" against whom an action will lie. *Id*. at 274. The Court reasoned that "Glamorgan's trade, business or occupation was manufacturing pipe and selling and shipping it to its customers. Transporting the pipe to the customers was a necessary element of this business." *Id*. at 273. Likewise, here, transporting the freight from the warehouse to the Sears Auto Centers and Sears retail locations was an essential element of Defendant's business, which Plaintiff admits includes "Warehousing" and "Freight Management."

lacks subject-matter jurisdiction and will dismiss the case pursuant to Rule 12(b)(1).

**V.**

For the stated reasons, Defendant's motion to dismiss for lack of jurisdiction will be granted. An appropriate order accompanies this memorandum opinion.

Entered this 26th day of June, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE